UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| CAITLIN BAUGHMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Case No. |
| v. ) | 5:15-cv-29-JMH |
| ) | |
| TROY BROOKS, et al., ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendants. ) | |
| ) | |

\*\*\*

This matter is before the Court on the Motion for Summary Judgment of Defendant, Troy Brooks. [DE 26]. Plaintiff, Caitlin Baughman, has filed a Memorandum in Opposition to the Motion for Summary Judgment [DE 44], and Defendant has replied in support of his motion [DE 45]. The Court having reviewed the motion, opposition, and reply, and being otherwise adequately advised, the motion is now ripe for decision.

*Background*

There is no genuine issue of material fact with respect to the events which led up to and caused Defendant to arrest Plaintiff.[1] On the evening of February 6, 2014, around 10:15 p.m., Defendant Troy Brooks, a Kentucky State Police Trooper, along with Sergeant Newt Robinson and Deputy Sheriff Teddy Rawlins, arrived

---

[1] There is a genuine issue of material fact as to whether Defendant entered Plaintiff's home at the time of arrest, which will be discussed below.

at the home of Plaintiff to serve a bench warrant on her brother, Jason Sizemore. The officers parked their vehicles down the street and approached Plaintiff's house on foot. Sergeant Robinson and Deputy Rawlins went to the side of the house where a carport is located and began knocking on the side door, announcing that they were the sheriff and police, while Trooper Brooks approached the front door. At this time, Plaintiff was sitting in her underwear at the kitchen table, working a jigsaw puzzle and wearing earplugs.[2] Upon instruction from Deputy Rawlins and Sergeant Robinson, and in an effort to announce their presence, Defendant brought his police car to the front of the house, turned on the lights and sirens, and instructed Mr. Sizemore to come out over the PA system.

Because Plaintiff was wearing earplugs, she did not hear sirens or knocking or realize someone was outside until alerted by her brother who began motioning to her from the dining/living room area. Plaintiff avers that she believes her brother had previously been sleeping. Plaintiff ran to her bedroom to get her pants on, where she hid for some period of time while her brother put his clothes on, which Plaintiff testifies could have been five or ten minutes although possibly as long as fifteen minutes. During this period, Plaintiff removed her earplugs and could hear the knocking

---

[2] Plaintiff avers that she has been diagnosed with a number of social phobias and "is forced to spend considerable time insulating herself from excessive stimulations from sound, taste, and touch." [DE 1 at ¶ 16].

2

and the officers saying "ma'am, open the door" several times from both the front and side doors and, at some point during this timeframe, Plaintiff looked outside and saw blue lights flashing. Plaintiff testified that she never heard an announcement over the PA.

Once Mr. Sizemore had his clothes on, Plaintiff and Mr. Sizemore left the bedroom area, went back out into the kitchen, then to the carport door. Around this time, Defendant Brooks had returned from his car to the carport side of the house, at which time Mr. Sizemore opened the side door, where Plaintiff was also standing, and was placed under arrest, after some resistance, by the officers. After Mr. Sizemore was secured in the police cruiser, Trooper Brooks returned to the carport area, and after conferring briefly with the other officers, proceeded to arrest Plaintiff for resisting arrest for placing himself and Officer Robinsons and Sergeant Rawlins in an unknown amount of danger for going into the back of the house out of sight of the officers when the officers had previously announced their presence and then returning with a wanted person.[3] Whether Trooper Brooks entered Plaintiff's home to arrest Plaintiff or arrested Plaintiff outside her home is a genuine issue of material fact. According to Plaintiff, Trooper Brooks entered Plaintiff's home to effectuate

---

[3] DE 1-1, Citation of Caitlin Baughman.

3

the arrest. While Defendant disputes entering the home, he concedes the fact for purposes of this motion.

Following her arrest, Plaintiff was transported to the Bourbon County Detention Center where she was incarcerated until released on bond the following day. On March 12, 2014, the Bourbon District Court dismissed Plaintiff's criminal citation due to a lack of probable cause. Plaintiff alleges she has been emotionally damaged as a result of the arrest, stating that while she contemplated suicide prior to the arrest incident, her thoughts of suicide have since increased. Plaintiff states that she suffered no physical injuries other than a bruise on her foot from walking barefoot on ice down her driveway to the police cruiser and a bump on her head as a result of entering and exiting the police cruiser which she attributes to her own awkwardness rather than any action by Trooper Brooks.

Plaintiff brings federal claims under 42 U.S.C. § 1983, alleging a violation of her rights under the Fourth, Fifth, Eighth, and Fourteenth Amendment. Plaintiff includes assault and battery, false imprisonment, malicious prosecution, and abuse of criminal process as alleged constitutional violations under § 1983. She also brings state law claims for assault and battery, false imprisonment, malicious prosecution and intentional infliction of

emotional distress.  Plaintiff seeks economic damages, damages for pain and suffering, as well as punitive damages.[4]

While Defendant states generally that summary judgment on all claims is appropriate based on the defense of qualified immunity [DE 26 at 6], Defendant's memorandum in support of his motion for summary judgment only addresses qualified immunity with respect to Plaintiff's claims for warrantless arrest and entry in violation of the Fourth Amendment.  The Court is unable to discern any argument by Defendant with respect to qualified immunity on all other state and federal claims made by Plaintiff.  Even though Plaintiff ultimately bears the burden of proving that Defendant Brooks is not entitled to qualified immunity, Defendant bears the initial burden of presenting facts that, if true, would establish that he was acting within the scope of his discretionary authority and entitled to qualified immunity.  *See Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).  As the Court previously instructed with respect to Defendant's Motion to Dismiss, it is not the obligation of the Court to research or construct Defendant's arguments, especially when represented by counsel.  *See* DE 17 at 11; *Lewless v. Sec'y of Health & Human Servs.*, 25 F.3d 1049 (6th Cir. 1994); *Shqutaj v. Gonzales*, 158

---

[4] In addition to Officer Brookers, Plaintiff's Complaint names four other Kentucky State Police Officers, individually and in their official capacities, as well as the Kentucky State Police, all of whom have previously been dismissed from this action.  [DE 17].

Fed. App'x 663, 665–66 (6th Cir. 2005)("Where the petitioner's brief lacks legal or factual argument, this Court will not examine the record and construct an argument on petitioner's behalf."); *Broughton v. Hensley*, No. 6:13-75, 2013 WL 2558180, at *1 (E.D. Ky. June 10, 2013)(quoting *United States v. Zannino*, 895 F.2d 1, 8 (1st Cir. 1990) ("It is not enough to merely mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."). Thus, in fulfilling its role as a neutral decisionmaker and not an advocate, the Court will consider whether Defendant is entitled to qualified immunity as to Plaintiff's § 1983 claims alleging warrantless arrest and entry.

For the reasons stated below, Defendant's motion for summary judgment will be granted as to Plaintiff's § 1983 claim of false arrest/imprisonment and denied as to Plaintiff's claim of warrantless entry.

*Standard*

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." The moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*

6

*v. Catrett,* 477 U.S. 317, 325 (1986). The nonmoving party, which in this case is the plaintiff, "cannot rest on [her] pleadings," and must show the Court that "there is a genuine issue for trial." *Hall v. Tollett,* 128 F.3d 418, 422 (6th Cir. 1997). In considering a motion for summary judgment the court must construe the facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

When the question is one of qualified immunity, however, the analysis is somewhat altered. In ruling on a motion for summary judgment based on the defense of qualified immunity, the existence of a disputed, material fact does not necessarily preclude summary judgment. Even if there is a material fact in dispute, summary judgment is appropriate if the Court finds that – viewing the facts in the light most favorable to the plaintiff – the plaintiff has failed to establish a violation of clearly established constitutional law. *Saucier v. Katz,* 533 U.S. 194 (2001); *Dickerson v. McClellan,* 101 F.3d 1151, 1158 (6th Cir. 1996).

*Discussion*

*I.   Qualified Immunity*

In order to establish a valid claim under 42 U.S.C. § 1983, Plaintiff must show that Defendant Brooks (1) violated one or more of his constitutional or federal statutory rights while (2) acting under color of state law. *See Sigley v. City of Parma Heights,*

7

437 F.3d 527, 533 (6th Cir. 2006)(citing West v. Atkins, 487 U.S. 42, 48 (1988)).

Qualified immunity protects "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Its purpose is "to shield the official from suit altogether, saving him or her from the burdens of discovery and costs of trial." *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001)(citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). This doctrine has also been described as a broad standard which is designed to protect "'all but the plainly incompetent or those who knowingly violate the law.'" *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "If no reasonably competent officer would have taken the same action, then qualified immunity should be denied; however, 'if officers of reasonable competence could disagree on [the legality of the action], immunity should be recognized.'" *Id*. (quoting *Malley*, 475 U.S. at 341). "Once [this doctrine has been] raised, the plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity." *O'Malley v. Flint*, No. 09-2037, 2011 WL 3055227, at *2 (6th Cir. July 26, 2011).

8

In *Pearson v. Callahan,* 555 U.S. 223 (2009), the Supreme Court clarified the two-prong test for qualified immunity. *See also Brown v. Lewis*, 779 F.3d 401, 411-12 (6th Cir. 2015). To satisfy the first prong at the summary judgment stage, the plaintiff must show that "based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred." *Sample v. Bailey,* 409 F.3d 689, 695 (6th Cir. 2005)(quoting *Feathers v. Aey,* 319 F.3d 843, 848 (6th Cir. 2003) (internal quotation omitted)); *see also Saucier v. Katz,* 533 U.S. 194, 201 (2001). For the second prong, Plaintiff must also show that "the violation involved a clearly established constitutional right of which a reasonable person would have known." *Sample,* 409 F.3d at 696; *see also Saucier,* 533 U.S. at 201. The court may address these prongs in any order, and if the plaintiff cannot make both showings, the officer is entitled to qualified immunity. *Pearson,* 555 U.S. at 236. The question of whether an official is entitled to qualified immunity is a question of law which must be determined by the Court. *Heflin v. Stewart County, Tenn.,* 958 F.2d 709, 717 (6th Cir. 1992).

Applying these standards, the Court will examine whether Defendant Brooks is entitled to qualified immunity as to Plaintiff's claims for warrantless arrest and entry.[5] On the facts

---

[5] Defendant Brooks does not dispute that he was acting under color of state law at the time of the incident. Moreover, Plaintiff does not dispute that Brooks was performing a discretionary function when he decided to arrest Plaintiff.

9

presented to the Court in this matter, Plaintiff's § 1983 cause of action for false imprisonment cannot survive as Plaintiff has failed to show a violation of a constitutionally protected right for the reasons stated below, therefore, this claim shall be dismissed as Trooper Brooks is due qualified immunity. However, as further explained below, Defendant is not entitled to qualified immunity with respect to Plaintiff's § 1983 cause of action for warrantless entry because Plaintiff has established that a constitutional violation of a clearly established right has occurred.

*II. False Arrest/Imprisonment, 42 U.S.C. § 1983*

Plaintiff alleges a § 1983 claim based on false arrest in violation of her Fourth Amendment rights. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend IV. A warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed. *See United States v. Watson,* 423 U.S. 411, 417–424 (1976). Thus, to establish a constitutional violation for false arrest under § 1983, a plaintiff must "prove that the arresting officer lacked probable cause to arrest the plaintiff." *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010)(quoting

10

*Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005)); *Arnold v. Wilder*, 657 F.3d 353, 363 (6th Cir. 2011).[6]

Probable cause exists if a reasonably prudent person would believe that there is a "fair probability" that a suspect has committed, is committing, or intends to commit a crime. *See Fridley v. Horrighs,* 291 F.3d 867, 872 (6th Cir. 2002). A police officer has qualified immunity from suit if the officer "arguably had probable cause" to arrest. *See Dier v. City of Prestonsburg,* 480 F.Supp.2d 929, 936 (E.D. Ky. 2007)(citing *Jeffers v. Heavrin,* 10 F.3d 380, 381 (6th Cir. 1993)). Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest. *Maryland v. Pringle,* 540 U.S. 366, 371 (2003); *United States v. Pearce*, 531 F.3d 374, 380-81 (6th Cir. 2008).

Here, Defendant Brooks alleges he had probable cause to believe Plaintiff committed the crime of resisting arrest, which was defined under Kentucky statute at the time of the conduct in question as follows:

> 1) A person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a peace officer, recognized to be acting under color of his official authority, from effecting an arrest of the actor or another by:

---

[6] Similarly, a false imprisonment claim requires a plaintiff to show that the underlying arrest lacked probable cause. *Wolgast v. Richards*, 389 F. App'x 494, 501 (6th Cir.2010) (presence of probable cause defeats Fourth Amendment false imprisonment and unlawful arrest claims).

11

>> (a) Using or threatening to use physical force or violence against the peace officer or another; or
>
> (b) Using any other means creating a substantial risk of causing physical injury to the peace officer or another.
>
> (2) Resisting arrest is a Class A misdemeanor.

Ky. Rev. Stat. Ann. § 520.090. Plaintiff argues that there was no probable cause because she had no duty to answer the door.

The Court holds that, even when viewing the evidence in the light most favorable to Plaintiff, Defendant Brooks did have probable cause to arrest Plaintiff for resisting arrest. By not answering the door when Plaintiff knew the police were knocking at the door and then retreating for a period of time to a place in the house where police could not see Plaintiff or her brother, for whom the police had an arrest warrant, Defendant was reasonable to believe that Plaintiff had intentionally attempted to prevent the officers from arresting her brother by using means which created a substantial risk of physical injury to the officers in violation of KRS 520.090. By Plaintiff's own admission, she hid in her bedroom for possibly as long as fifteen minutes, and that during this time, the officers could not see Plaintiff or tell what she was doing. Plaintiff could have been getting a weapon, helping her brother get a weapon or escape the house, or calling for someone to come to the house. Fortunately, in hindsight, that was not the case, and the officers were able to safely arrest Mr.

Sizemore. However, the probable cause analysis is performed "from the perspective of reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001) (citation and internal quotation marks omitted); *see also Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *Fridley v. Horrighs,* 291 F.3d 867, 872 (6th Cir. 2002).

Here, Trooper Brooks reasonably believed that Plaintiff had committed, was committing, or intended to commit the crime of resisting arrest. Accordingly, as Plaintiff cannot demonstrate a constitutional violation on the undisputed facts, there is no violation of 42 U.S.C. § 1983 on grounds of false arrest/imprisonment, and Brooks is due qualified immunity. Plaintiff's motion for summary judgment will be granted as to Plaintiff's § 1983 false arrest/imprisonment claim.[7]

*III. Warrantless Entry*

As a preliminary matter, the Court notes that there is some question as to whether the complaint alleges warrantless arrest alone or warrantless arrest and warrantless entry into the Plaintiff's home. Nevertheless, both parties have submitted arguments with respect to the warrantless arrest and the warrantless entry claims. Indeed, Trooper Brooks states that the

---

[7] Because Plaintiff's arrest and imprisonment were not in violation of her constitutional rights, the Court need not consider the second prong of the qualified immunity inquiry.

13

Court must accept the Plaintiff's position that Brooks entered Plaintiff's home in order to arrest her. [DE 45 at 7]. The Court, therefore, concludes that Defendant Brooks has received adequate notice of both allegations under the "course of proceedings" test applied to ambiguous § 1983 claims. *Cummings v. City of Akron*, 418 F.3d 676, 681 (6th Cir. 2005) ("We apply a 'course of the proceedings' test to determine whether defendants in a § 1983 action have received notice of the plaintiff's claims where the complaint is ambiguous.")(quoting *Moore v. City of Harriman*, 272 F.3d 769, 774 (6th Cir. 2001) (en banc)("Subsequent filings in a case may rectify deficiencies in the initial pleadings.")). Therefore, the Court will also address the warrantless entry claim, and for the reasons stated below, finds that summary judgment is inappropriate as to this claim.

A "'person may not be arrested at home without a warrant, regardless of the existence of probable cause, absent exigent circumstances.'" *Estate of Bing v. City of Whitehall*, 456 F.3d 555, 564 (6th Cir. 2006) (quoting *United States v. Bradley*, 922 F.2d 1290, 1293 (6th Cir.1991), overruled on other grounds by *United States v. McGlocklin*, 8 F.3d 1037, 1047 (6th Cir. 1993) (en banc )); *see also United States v. Rohrig*, 98 F.3d 1506, 1513 (6th Cir.1996) ("'[S]earches and seizures inside a home without a warrant are presumptively unreasonable.'") (quoting *Payton v. New York*, 445 U.S. 573, 586 639 (1980)). "Exigent circumstances are

14

situations where real immediate and serious consequences will certainly occur if the police officer postpones action to obtain a warrant." *Thacker v. City of Columbus*, 328 F.3d 244, 253 (6th Cir. 2003) (internal quotations omitted). The Sixth Circuit has explained that the following four situations may give rise to exigent circumstances: "(1) hot pursuit of a fleeing felon, (2) imminent destruction of evidence, (3) the need to prevent a suspect's escape, and (4) a risk of danger to the police or others." *Id*.

Here, taking Plaintiff's version of the fact as true as it must and assuming Defendant Brooks did in fact enter Plaintiff's home to effectuate the arrest, the Court finds there was a constitutional violation of Plaintiff's Fourth Amendment rights. There is no evidence in the record that Defendant entered the home under exigent circumstances or with the consent of Plaintiff, and Defendant has not argued so in his briefs. Therefore, Defendant's alleged entry was presumptively unreasonable.

Having found a constitutional violation, the Court must address the second prong of the qualified immunity analysis, that is, whether the right to be free from a warrantless entry was a clearly established constitutional right at the time of the incident. "In regard to the second part of the qualified immunity analysis, the Supreme Court has stated that '[t]he relevant, dispositive inquiry in determining [if] a right is clearly

15

established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001)(quoting *Saucier*, 533 U.S. at 202); *see also Myers v. Potter*, 422 F.3d 347, 356 (6th Cir. 2005). "When analyzing whether a constitutional right was clearly established at the time of the events in question [the Court] 'must look first to decisions of the Supreme Court, then to decisions of [the appeals court] and other courts within our circuit, and finally to decisions of other circuits.'" *Merriweather v. Zamora*, 569 F.3d 307, 315 (6th Cir. 2009) (quoting *Buckner v. Kilgore*, 36 F.3d 536, 539 (6th Cir. 1994)).

Legal precedent from the Supreme Court and Sixth Circuit abounds on the illegality of warrantless entries of a home. *See e.g., Cummings v. City of Akron,* 418 F.3d 676, 685 (6th Cir. 2005) (quoting *United States v. Chambers,* 395 F.3d 563, 565, 569 (6th Cir. 2005)("[w]ithout a warrant or consent, searches or seizures inside the home are upheld only 'under extraordinary circumstances,' because 'the freedom from armed intrusions of the home outside the judicial process, without prior approval by a judge or magistrate ... is one of our most basic civil liberties'"). Indeed, the Supreme Court has cautioned that the "chief evil" against which the Fourth Amendment protects is the "physical entry of the home." *Payton v. New York*, 445 U.S. 573, 585 (1980). Thus, the Court concludes that the facts taken in the

16

light most favorable to the Plaintiff show that the Defendant violated her clearly established right to be free of warrantless entry into her home.  For this reason, the Defendant has failed to show that he is entitled to qualified immunity on Plaintiff's warrantless entry claim, and the Court will deny the Defendant's motion for summary judgment on this count.

*Conclusion*

For the reasons set forth above, **IT IS ORDERED**:

(1)  that the motion for summary judgment of Defendant Troy Brooks [DE 26] is **GRANTED IN PART** with respect to Plaintiff's § 1983 claim of false arrest/imprisonment and **DENIED IN PART** with respect to Plaintiff's § 1983 claim of warrantless entry and each of Plaintiff's remaining § 1983 and state law claims for which an argument in support of qualified immunity has not been articulated by Defendant;

(2)  that Plaintiff's § 1983 claim of false arrest and imprisonment is **DISMISSED**;

(3)  that Plaintiff's Motion to Set Defendant's Motion for Summary Judgment for oral argument [DE 37] is **DENIED**.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge